# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 23-3078

———————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

HATCHET M. SPEED,

*Appellant.*

## APPELLANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO VACATE§1512(c)(2) CONVICTION

———————————————

In Response to Order to Brief its Motion to Vacate to the Merits Panel
1:22-cr-00244-TNM-1

———————————————

<div style="margin-left:45%">

Roger I. Roots
John Pierce Law, P.C.
21550 Oxnard St., 3rd Fl PMB 172
Woodland Hills, CA 91367
Telephone: (213) 349-0054
rroots@johnpiercelaw.com

*Counsel for Appellant*

</div>

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1)

A. **Parties and Amici:** This appeal arises from a criminal conviction of appellant Hatchet M. Speed. There are no known intervenors or amici.

B. **Rulings Under Review:** This is an appeal from a finding of guilty after a bench trial, on March 2, 2023, before the Honorable Trevor N. McFadden. Speed asserts that Judge McFadden's false construction of 1512(c)(2) as a catch-all "obstruction" law requires summary vacating, setting aside, and dismissal of the 1512(c)(2) charge, particularly in light of the Supreme Court's *Fischer* decision. Speed seeks reversal of the court's order denying his motion to dismiss, and reversal of his conviction in this matter.

C. **Related Cases:** This case has not been before this Court previously. Appellant is not aware of any related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES……..…2

TABLE OF AUTHORITIES....................................................................4

JURISDICTIONAL STATEMENT.........................................................6

STATEMENT OF ISSUES PRESENTED ..............................................6

STATEMENT OF THE CASE ...............................................................6

SUMMARY OF THE ARGUMENT.......................................................7

ARGUMENT…………………………………..………………………8

I.  This Court Must Vacate and Dismiss Speed's §1512(c)(2) Conviction on Grounds that Fischer Narrowed the Scope the Obstruction Law…………..8
   A. The Government's Argument that Mere Awareness or Statements About the Electoral College Vote are Sufficient to Prove Obstruction is Invalid under *Fischer*……………………………………………………...11
   B. The Government's Argument that Mere Presence on the Senate Floor or Joining the Crowd on Capitol Grounds, is Sufficient to Prove Obstruction is Invalid under *Fischer* ……………………………………...…16

II. This Court must Summarily Dispose of This Appeal Because "Further Briefing and Argument are Not Necessary" and the Resolution of the Prior Question in the Defendant's Favor will Likely Lead to a Reversal………..21
   A. The Jury's Conviction Should Not Stand Because Its Decision Would Have Been Different Had the Jury Instruction Included the New Interpretation of 1512(c)(2)……………………………………………..25
   B. Case Law Supports Vacating a Conviction Where an Omitted Element Was Not Considered by the Jury……………………………………..27

CONCLUSION………………………………..………………………….29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chapman v. California*,
    386 U.S. 18 (1967)………………………………………………………26

*Fischer v. United States*,
    603 U.S. ___ (2024)…………………………………………..………*passim*

*Neder v. United States*,
    527 U.S. 1, 15 (1999)…………………………………..……7, 25, 26

*O'Brien v. Dubois*,
    145 F.3d 16, 25 (1st Cir. 1998)……………………………....…..22

*People v. Cooper*,
    No. S273134, (Nov. 17, 2022)……………………………………..29

*People v. Mil*,
    53 Cal.4th 400, 419 (2012)…………………………...………..28

*People v. Nitz*,
    219 Ill.2d 400, 848 N.E.2d 982 (2006)…………………………….28

*Sullivan v. Louisiana*,
    508 U.S. 275, 279 (1993)……………………………………..25

*Taxpayers Watchdog, Inc. v. Stanley*,
    819 F.2d 294, 297 (D.C. Cir. 1987)…………………………...…7, 21

*United States v. De Bruhl*,
    Criminal No. 22-20650, (5th Cir. Oct. 11, 2024)……………….….………15

*United States v. Glover*,
    731 F.2d 41, 44 (D.C. Cir. 1984)……………………………..21

*United States v. Johnson*,
    216 F.3d 1162, 1166 (D.C. Cir. 2000)…………………….……….25

*United States v. Kelley*,
    CRIMINAL ACTION 22-408 (CKK) (D.D.C. Oct. 17, 2024)..…….…... 20

*United States v. Merlos*,
    8 F.3d 48, 50 (D.C. Cir. 1993)…………………………………………..26

*United States v. Montgomery*,
    478 F. Supp. 3d 54 (D.D.C. 2021)……………………………………22

*United States v. Seefried*,
    No. 21-cr-287, 2022 WL 16528415, at *11 (D.D.C. Oct. 29, 2022)…..…...22

*United States v. Sheehan*,
    512 F.3d 621 (D.C. Cir. 2008)……………………………….………26

*United States v. Stadd*,
    636 F.3d 630, 640 (D.C. Cir. 2011)…………………………………..25

*United States v. Stanford*,
    823 F.3d 814 (5th Cir. 2016)…………………………………………27

*United States v. Verrusio*,
    762 F.3d 1, 13 (D.C. Cir. 2014)…………………………….……...6

*United States v. Wilson*,
    605 F.3d 985, 1003 (D.C. Cir. 2010)………………………….……...6

*United States v. Weyer*,
    Criminal Action 22-40, (D.D.C. Feb 27, 2024)…………………..……..10

## STATUTES

3 U.S.C. § 1518……………………………………………….....20

18 U.S.C. § 1512(c)(2)………………………………...….*passim*

18 U.S.C. § 3231……………………………………………..……...6

18 U.S.C. § 3742……………………………………………..…..6

28 U.S.C. § 1291…………………………………………..……...6

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Speed's criminal prosecution under 18 U.S.C. § 3231. This Court of Appeals has jurisdiction over this appeal of Speed's conviction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This Courts of Appeals reviews legal questions that the defendant preserved *de novo*. *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010).

## STATEMENT OF ISSUES PRESENTED

1. Must this Court vacate and dismiss Speed's §1512(c)(2) conviction on grounds that *Fischer* narrowed the scope the obstruction law?

2. Must this Court summarily dispose of this appeal because "further briefing and argument are not necessary" and the resolution of the prior question in the defendant's favor will likely lead to a reversal?

## STATEMENT OF THE CASE

This appeal arises from Speed's participation in events at the United States Capitol on January 6, 2021. After a bench trial before the Honorable Trevor N. McFadden, Speed was convicted of five offenses, one of which was obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). After the Supreme

Court's decision in *Fischer*, narrowing the obstruction statute to involve document tampering, manipulation or fabrication, Speed's conviction in the District Court for obstructing an official proceeding cannot survive. Summary vacating, setting aside, and dismissal is especially appropriate here, where Speed's pretrial and trial proceedings directly contemplated the District Judge's false construction of 1512 as a catch-all "obstruction" law. Speed was simultaneously prosecuted in two federal court jurisdictions, and is currently serving two prison sentences. Both sentences are likely doomed to be invalidated; meaning every day spent in prison by Speed will have been served erroneously.

## SUMMARY OF THE ARGUMENT

Speed's § 1512(c)(2) conviction should be vacated and dismissed due to *Fischer v. United States*. 603 U.S. ___ (2024). The Supreme Court concluded that the offense described in §1512(c)(2) pertains to crimes of evidence tampering, manipulation, or fabrication and not simply delaying a proceeding by engaging in mass protest along with other rioters. Speed's 1512 conviction is precisely the type of conviction which is most suited for summary disposition. *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (summary disposition of an appeal is appropriate where "further briefing and argument are not necessary"). Under the *Neder* standard, the omission of an element is an error that is subject to harmless-error analysis. However, here, as in many January 6

cases, the jury would have not found facts that would have satisfied a proper instruction under the new interpretation of 1512(c)(2). The jury did not consider any evidence of evidence tampering, manipulation, or fabrication. Therefore, this count should be summarily vacated and dismissed.

## **ARGUMENT**

### I. **This Court Must Vacate and Dismiss Speed's §1512(c)(2) Conviction on Grounds that *Fischer* Narrowed the Scope of the Obstruction Law**

Appellant Hatchet Speed ("Speed") replies to the Government's Opposition to Speed's Motion to Vacate and Dismiss Speed's § 1512(c)(2) conviction due to *Fischer v. United States*. *Fischer v. United States*, 603 U.S. ___ (2024).

With breathtaking defiance of intervening controlling Supreme Court precedent, the United States contends that Speed's conviction in the District Court for obstructing an official proceeding (18 U.S.C. § 1512(c)(2)) can somehow survive. In *Fischer v. United States*, the Supreme Court considered whether mere rioting, protesting, or demonstrating which disrupts an official proceeding can qualify as corruptly obstructing such a proceeding as contemplated in the statute.[1]

---

[1] The D.C. Circuit ruled that the "otherwise" provision in Sec. (c)(2) covers "all forms of corrupt obstruction of an official proceeding, other than the conduct" covered by (c)(1). However, the Supreme Court held that resolving the scope of the "otherwise" clause requires determination of how it is linked to its "surrounding words." That requires consideration of the "specific context" of (c)(2) "and the broader context of the statute as a whole." "Congress would not

*Id*. *Fischer* made it clear that *delaying* a proceeding (through participation in a protest or riot) and *obstructing* a proceeding are two different things.

(or impairing, or attempting to impair "the availability or integrity for use in an official proceeding of records, documents, or objects" or other things used in the proceeding) are two completely different things have completely different evidentiary requirements. Analyzing the obstruction charge is important because it carries a 20-year maximum sentence and has often been used to coax defendants into plea deals. The Supreme Court examined and pondered the history, legislative intent, wording, and linguistic structure of the statute in great detail, and concluded that the offense described in §1512(c)(2) pertains to crimes of evidence tampering, manipulation, or fabrication.[2] The offense is not a catch-all obstruction or

_____

ordinarily introduce a general term that renders meaningless the specific text that accompanies it." The statute was enacted in response to the Enron corporate scandal, in which large numbers of documents were systematically shredded to cover up wrongdoing. It would be "peculiar" to conclude that Congress intended a "catchall provision" in (c)(2) to reach "far beyond the document shredding and similar scenarios that prompted the legislation in the first place." Greg Mermelstein, *Fischer v. United States: Sarbanes-Oxley obstruction statute requires destruction of documents or records; doesn't apply to general conduct of "January 6" defendants*, PUBLIC DEFENDERS, Sep. 15, 2024, https://publicdefenders.us/blogs/fischer-v-united-states-sarbanes-oxley-obstruction-statute-requires-destruction-of-documents-or-records-doesnt-apply-to-general-conduct-of-january-6-defendants/.

[2] Federal prosecutors have used § 1512(c)(2) to charge individuals based on conduct such as falsifying evidence to influence a federal grand jury investigation,

disruption statute.  In fact, in Judge Boasberg's recent memorandum opinion

concerning a January 6 participant, he seemed to agree with the defendant, Sandra

Weyer, that the obstruction statute likely does not include "acts unrelated to

investigations and evidence."  *United States v. Weyer*, Criminal Action 22-40,

(D.D.C. Feb 27, 2024).  It is a close question whether her conduct at the Capitol,

"rioting," would amount to sufficient evidence to conclude that she obstructed

Congress's electoral vote certification under §1512(c)(2) as reinterpreted by

*Fischer*.  Like Speed, Weyer was charged with the §1512(c)(2) obstruction

violation as well as four misdemeanor violations: 1752(a)(1) Entering and

Remaining in a Restricted Building or Grounds, 1752(a)(2) Disorderly and

Disruptive Conduct in a Restricted Building or Grounds, 5104(e)(2)(D) Disorderly

Conduct in a Capitol Building, and 5104(e)(2)(G) Parading, Demonstrating, or

Picketing in a Capitol Building.  Weyer was sentenced to 14 months of

incarceration on the felony, 12 months on the first two misdemeanors and 6

months on the latter two misdemeanors all to run concurrently.

---

soliciting a fabricated confession from another to escape pending federal theft
charges, tipping off the target of a grand jury proceeding about an undercover
operation, and setting an apartment ablaze to destroy two deceased human bodies
that were evidence of a double murder.  Peter G. Berris, *Fischer v. United States:
Supreme Court Reads Federal Obstruction Provision Narrowly in Capitol Breach
Prosecution*, CONGRESSIONAL RESEARCH SERVICE, July 10, 2024, at page 3,
https://crsreports.congress.gov/product/pdf/LSB/LSB11126.

**A. The Government's Argument that Mere Awareness or Statements About the Electoral College Vote are Sufficient to Prove Obstruction is Invalid under *Fischer***

Appellant Speed is a "January 6" defendant much like Misters Fischer, Garret, and Lang. The alleged, found, and stated facts of Speed's conduct on January 6—taken in the light most favorable to the government—are similar to the alleged and stated facts of Fischer's case, Garret's case, and Lang's case. If anything, Speed's facts have <u>less</u> relationship to evidence manipulation or destruction than did the facts of Fischer's, Garret's, or Lang's cases. Remember, in *Fischer*, the alleged obstructive acts included "encourag[ing] rioters to 'charge' and 'hold the line,'" pushing police, and "a 'physical encounter' with at least one law enforcement officer." *See Fischer*, 603 U.S; *see also* Peter G. Berris, *Fischer v. United States: Supreme Court Reads Federal Obstruction Provision Narrowly in Capitol Breach Prosecution*, CONGRESSIONAL RESEARCH SERVICE, July 10, 2024, at page 3, https://crsreports.congress.gov/product/pdf/LSB/LSB11126.

The United States lists, in its Opposition, what one must presume are the most severe and acute facts in Speed's case which the government contends might rise to the level of a §1512(c)(2) violation:

- "Speed entered into the Capitol with a group of rioters . . . around 2:51 p.m. on January 6, 2021" (*Id.*).
- Congress was already evacuating the building and was unable to resume its certification of the 2020 presidential election until police cleared all rioters from the building (*Id.*).

- "With respect to Speed's intent, Judge McFadden noted: '[O]f all the obstruction-related cases I have considered to date, I think the evidence on this point is the strongest and most damning here.'"
- Speed's "extensive understanding of the electoral vote certification process." (*Id.* at 4.)
- "Among other things, Speed specifically intended to delay the proceedings to enable an investigation that he hoped would result in then-Vice President Pence certifying alternate elector slates (*Id.* at 4-6)." "When he learned that the Vice President had "validated all the invalidated ballots," he and the mob "all went in and took control" (ECF 79 at 15-16).
- Speed "did not leave until he got "what we wanted" (*Id.* at 17).
- Speed "believed that Congress had agreed to delay consideration of the ballots while an "investigation into the improprieties of the election"—and the propriety of those ballots—occurred (*Id.* at 7)."
- "With respect to evidence of Speed's "corrupt intent," Judge McFadden found that "actions such as pushing past multiple lines of fencing and police officers using pepper spray and then working with a mob to force their way into the Capitol building are self-evidently wrong and done with a wrongful purpose." (*Id.*)
- "One of the more egregious examples" occurred when Speed watched a "fellow rioter using a crow bar to break down the Senate Parliamentarian's door moments before [Speed] went through an adjacent door" (*Id.*).
- "Judge McFadden found that the evidence "amply demonstrate[d] the corrupt intent" element and found Speed guilty of violating § 1512(c)(2), as well as guilty of the four misdemeanors."

Government's Opposition, pages 2-4.

Again, these facts in Speed's case are significantly <u>less</u> associated with

evidence impairment or document destruction or fabrication than the facts in

Fischer's, Lang's, and Garret's cases.

Indeed, the District Court found that the facts in Speed's case were more akin to

misdemeanor disorderly conduct cases than to felony obstruction. District Judge

McFadden stated during Speed's sentencing hearing that Speed's "conduct was

frankly comparable to defendants who the Government has only charged with misdemeanors. . . . I think it's very possible if he had pled guilty early he could have gotten a no-jail sentence.":

```
13          THE COURT:  Ms. Loeb, on that point, I am
14     wrestling with the fact that, you know, his conduct was
15     frankly comparable to defendants who the Government has only
16     charged with misdemeanors.  You had initially charged him
17     just with a misdemeanor.  I think it's very possible if he
18     had pled guilty early he could have gotten a no-jail
19     sentence.
```

Sentencing hearing, May 8, 2023, p. 19.

As of August 2024, prosecutors are continuing their case against Donald and Shawndale Chilcoat merely because those defendants were "aware" the congressional proceeding involved records, "specifically, the electoral votes that Congress was to consider."  Andrew Goudsward, *Accused US Capitol rioter skips obstruction charge after Supreme Court ruling*, REUTERS, Aug. 28, 2024, https://www.reuters.com/legal/us-supreme-court-obstruction-ruling-sparks-new-legal-fights-jan-6-riot-2024-08-28/.  Prosecutors are seeking an updated jury instruction on the 1512(c)(2) issue because the defendants were aware of the "presence of physical ballots" when they joined the mob in the Senate Chamber and were trying to stop Vice President Mike Pence "from certifying the votes."

Jordan Fischer, *DOJ says it will move ahead with Jan. 6 trial on obstruction count even after SCOTUS ruling*, WUSA, Aug. 21, 2024, https://www.wusa9.com/article/news/national/capitol-riots/doj-says-it-will-move-ahead-with-jan-6-trial-on-obstruction-count-even-after-scotus-ruling-donald-shawndale-chilcoat-official-proceeding-capitol-riot/65-a7f91d9e-49e7-45ba-9497-03e3268a2232.

In another case where prosecutors are charging obstruction on mere "awareness" of the role of records and documents, defendant Stephanie Baez's had to defend a third superseding indictment on a 1512(c) charge as of September 18, 2024. The government claims Baez's social media posts show in-depth understanding of the role that records and documents would play in the certification process she allegedly sought to obstruct. Roger Parloff, The Justice Department's New Approach to "Despite-Fischer" Cases, Lawfare, Sep. 30, 2024, https://www.lawfaremedia.org/article/the-justice-department-s-new-approach-to--despite-fischer--cases. It is hard to believe the Justice Department plans to continue to prosecute this case on mere awareness. The prosecution indicated that it would simply update the jury instruction to incorporate language from subsections (c)(1) and (c)(2). However, an in-depth understanding of the role that records and documents would play in a certification process is simply not the same as impairing such process. The facts in Baez are similar to the facts in Speed

and both cases should result in a similar outcome: dropping the 1512 obstruction charge.

Finally, in a major Fifth Circuit case, the Circuit dropped a defendant's 1512(c)(2) obstruction convictions because *Fischer* required reversal of those convictions. *See United States v. De Bruhl*, Criminal No. 22-20650, (5th Cir. Oct. 11, 2024). In *De Bruhl*, Federal agent Leatrice De Bruhl-Daniels (De Bruhl) purportedly sought to develop an individual with suspected terrorist ties into an intelligence source while she was stationed in Dubai. Along the way, she accepted gifts and favors and began a romantic relationship with him, despite being warned by her consulate coworkers to keep her distance. Instead of developing a source, she became one: She tipped her paramour off about an ongoing counterterrorism investigation into his activities and then lied to federal investigators about doing so. Counts 15, 36, and 37 alleged that De Bruhl corruptly attempted to obstruct, influence, and impede an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Specifically, Count 15 charged De Bruhl with obstruction for informing Diya that he was the target of federal criminal investigations, Count 36 charged De Bruhl with obstruction for telling Diya that he would be arrested if he returned to the United States, and Count 37 charged De Bruhl with obstruction for informing Diya that Arafat was also an investigation target. The jury likewise convicted De Bruhl on these counts. De Bruhl argued that tipping off a target of an

investigation does not interfere with the types of evidence specified by §
1512(c)(1), i.e., records, documents, or other objects, so her conduct likewise does
not implicate § 1512(c)(2). The Government disagreed, contending that
compromising the investigation into Diya and Arafat constituted interference with
possible witness testimony and intangible information. The Court held that these
counts fall out-of-bounds of the Supreme Court's admonition not to apply §
1512(c)(2) as a general anti-obstruction statute. *See Fischer*, 144 S. Ct. at 2189.
The Court did not identify any relevant source of possible impaired evidence
required under *Fischer*. Following *Fischer*, the Court concluded that De Bruhl's
convictions under these three counts must be vacated. The Court went on to
address De Bruhl's sentence and agreed with De Bruhl that her sentence must be
vacated to allow the district court to revisit it in light of her vacated convictions.

**B. The Government's Argument that Mere Presence on the Senate Floor or Joining the Crowd on Capitol Grounds, is Sufficient to Prove Obstruction is Invalid Under *Fischer***

One defendant to date has received a sentencing reduction because of
*Fischer*. 45 Months Since the Jan. 6 Attack on U.S. Capitol, UNITED STATES
ATTORNEY'S OFFICE DISTRICT OF COLUMBIA, Oct. 7, 2024,
https://www.justice.gov/usao-dc/44-months-jan-6-attack-us-capitol. That
defendant, a former police officer named Thomas Robertson, was convicted of a
felony obstruction charge related to his efforts to stop the certification of the

election and federal prosecutors moved to dismiss his conviction on just that charge in the wake of *Fischer*. Daniel Barnes and Ryan J. Reilly, Former officer gets reduced Jan. 6 sentence thanks to Supreme Court ruling, NBC NEWS, Sept. 4, 2024, https://www.nbcnews.com/politics/justice-department/jan-6-rioter-sentence-reduced-supreme-court-obstruction-ruling-rcna169442. Robertson's sentence was reduced from 87 months to 72 months. U.S. District Judge Christopher Cooper said the decision was not a reflection of any change in his thinking on the seriousness of Robertson's crimes — he emphasized that what occurred on Jan. 6 is "not hyperbole – it was a real harm." But he said he "struggled" to see how he could maintain the original sentence in light of the Supreme Court's ruling. AUSA Elizabeth Aloi argued the "damage done to the country must not be treated as just another crime," that the defendant was prepared to start a "rebellion and attack the nation's democracy," and that "nothing" Robertson did changed. "His offense targeted the peaceful transfer of power," Aloi said. "There's no reason to second guess that decision." However, nothing in the evidence revealed any attempt to obstruct an official proceeding by attempting to impair "the availability or integrity for use in an official proceeding of records, documents, or objects," as required under *Fischer*. Instead, evidence only pointed to attending the rally near the Washington Monument, "storm[ing] the Capitol wearing a gas mask with a wooden stick in his hand that jurors said he had used as a weapon to confront

police, making a prior post on Facebook suggesting he spent his life "fighting a counter insurgency," and that he was about to become a part of a "very effective one." This is all evidence of perhaps a protest gone awry, but it does not amount to a 1512(c)(2) charge under *Fischer* and Judge Cooper was correct to reduce the sentence by 15 months because prosecutors agreed to drop the obstruction charge.

Another defendant, Dominic Box, has had his obstruction of an official proceeding count dismissed in the District Court for the District of Columbia in the interests of justice, finality, and judicial economy. Drew Favakeh, *U.S. Attorneys ask Judge to render a verdict in Jan. 6 case involving Savannah man*, SAVANNAH NOW, Sep. 26, 2024, https://www.savannahnow.com/story/news/2024/09/26/attorneys-file-document-that-could-close-jan-6-case-for-savannah-man/75374443007/. US Attorneys explained, "In order to efficiently achieve justice, the government respectfully seeks that the Court render a verdict on the remaining counts at issue, and proceed to sentencing on those counts (two other felonies for civil disorder and four misdemeanors)." This will ensure finality in this litigation. "While the government does not concede any of the legal arguments raised by the defendant in his motion – including a fundamental misunderstanding of the law at play – and believes that the § 1512(c)(2) charge here likely remains viable after *Fischer*, the government nonetheless believes it appropriate to move to dismiss Count One in the interests of

judicial economy." Box was found guilty of the remaining two felonies and four misdemeanors at his stipulated trial later in October 2024. Emma Hamilton, *Savannah man found guilty for his role in Jan. 6 riot*, WJCL, Oct. 17, 2024, https://www.wjcl.com/article/savannah-man-guilty-dominic-box/62635386.

However, prosecutors are still attempting to sustain obstruction charges involving defendants who were merely present on the Senate Floor. Prosecutors wanted to try one pair of defendants, Christopher Carnell and David Bowman, after having been found guilty of obstruction. Prosecutors argued they could justify obstruction charges by pointing to the duo's actions on the Senate floor, where Bowman allegedly photographed a letter signed by Senator Mitt Romney.

Another defendant, Larry Brock, who was also a retired Air Force lieutenant colonel, was found guilty of the 1512(c)(2) obstruction charge merely for being in tactical gear, carrying plastic flex cuffs or "zip ties," spending 37 minutes inside the Capitol building and on the chamber floor, rifling through papers on senators' desks, appearing outside House Speaker Nancy Pelosi's office. Drew F. Lawrence, *Retired Air Force Lt. Col. Who Wielded Zip Ties on Floor of Congress Found Guilty for Jan. 6 Breach*, Military.com, Nov. 16, 2022, https://www.military.com/daily-news/2022/11/16/retired-air-force-lt-col-who-wielded-zip-ties-floor-of-congress-found-guilty-jan-6-breach.html. The only evidence impairment fact was his "rifling through papers on senators' desks." This

act does not amount to impairing the availability or integrity of evidence for use in an official proceeding. Brock would simply be charged with the 1512(c)(2) obstruction charge merely for being in the chamber that day and sifting through papers.

Finally, the government continues to prosecute a January 6 defendant for joining the crowd, pushing into the Capitol while Congress was meeting to certify the vote count of the Electoral College, and throwing a USCP officer to the ground. *See United States v. Kelley*, CRIMINAL ACTION 22-408 (CKK) (D.D.C. Oct. 17, 2024).

In late September 2024, with the benefit of the Supreme Court's decision in *Fischer* authoritatively interpreting the scope of § 1512(c), a grand jury returned a Superseding Indictment replacing the original Indictment's obstruction charge with a new charge based on the entirety of § 1512(c), which alleges: On or about January 6, 2021, within the District of Columbia and elsewhere, Edward Kelley, attempted to, and did, corruptly alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use in an official proceeding, and otherwise obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. § 1518. The

government held that any asserted insufficiency in the government's evidence is not a proper basis for pretrial dismissal of Count 2 of the Superseding Indictment at the motion to dismiss stage. Contrary to Kelley's arguments, the Court said it is not necessary for the indictment to state exactly *how* his conduct satisfies each element of the offense, such as by specifying which actions he took, aided, or attempted "with the intent to impair the integrity or availability" of a "record, document, or other object" to be used in Congress's certification of the Electoral College vote. However, judging only from the facts alleged, it is unlikely that Kelley can be found guilty for any impairment of a record or document when he only joined the crowd and assaulted an officer, serious crimes, but not crimes which fall under 1512(c)(2).

## II. This Court must Summarily Dispose of This Appeal Because "Further Briefing and Argument are Not Necessary" and the Resolution of the Prior Question in the Defendant's Favor will Likely Lead to a Reversal

Speed's 1512 conviction is precisely the type of conviction which is most suited for summary disposition. *See Taxpayers Watchdog, Inc.*, 819 F.2d at 297 (summary disposition of an appeal is appropriate where "further briefing and argument are not necessary"); *United States v. Glover*, 731 F.2d 41, 44 (D.C. Cir. 1984) (an issue is well-suited for summary disposition if it presents "a single uncomplicated legal issue to be decided in an area where the case law is well developed." "[T]he key inquiry is whether a Supreme Court rule – by virtue of its

factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations – can fairly be said to require a particular result in a particular case." *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998).

Summary vacating, setting aside, and dismissal is especially appropriate here, where Speed's *pretrial and trial proceedings directly contemplated the District Judge's <u>false</u> construction* of 1512 as a catch-all "obstruction" law rather than a statute requiring a more specific level of evidence obstruction. When Speed moved for dismissal of Count One (the §1512(c)(2) charge), the District Court denied Speed's motion <u>on grounds which</u> <u>were overruled later</u> by the *Fischer* decision.

In its ruling on 2/28/23 (Document 54), District Judge McFadden found that Speed's legal arguments (which turned out to be consistent with the Supreme Court's later *Fischer* decision) were "not persuasive." "The Court," wrote McFadden, "agrees with '[m]ost judges in this district" [back in February 2023] that § 1512(c) is not limited to a specific obstruction offense such as obstruction of the administration of justice,'" (quoting from *United States v. Seefried*, No. 21-cr-287, 2022 WL 16528415, at *11 (D.D.C. Oct. 29, 2022); and *United States v. Montgomery*, 478 F. Supp. 3d 54 (D.D.C. 2021)).

Then, after the District Court denied Speed's motion to dismiss the §1512 count, the District Judge's legal instructions at trial, and the District Judge's verdict plainly <u>imposed and applied the very erroneous legal standard which was directly overruled by the Supreme Court</u>.

Speed's 1512 conviction cannot survive any further analysis. It would be an utter waste of time and resources by all parties (including this Court of Appeals and the government itself) to force Speed to brief the issue while Speed waits in prison doing time for a crime which the Supreme Court held he did not commit.

**Speed is wrongly convicted and in federal prison serving two prison terms for crimes he did not commit.**

The government's pronouncements regarding Speed's imprisonment are especially thoughtless. Speed was simultaneously prosecuted in two federal court jurisdictions, and is currently serving two prison sentences. And both sentences are likely doomed to be invalidated; meaning every day spent in prison by Speed will have been served erroneously.

1. Speed was sentenced to 48 months imprisonment in this (January 6) case; where Speed has already served more time than his concurrent misdemeanor sentences (12 months concurrent for two misdemeanors, concurrent with two 6-month terms).

2. Speed was additionally sentenced to 36 months (consecutive to the DC case) in the Eastern District of Virginia for "possession of three firearm silencers."

3. Thus, Speed is serving a total of seven (7) years imprisonment.

Speed has already served some twenty months imprisonment—more than the total of his misdemeanors in this (DC case).

Speed's "firearm silencer" case is a case of first impression anywhere in the federal court system. Speed was literally convicted of merely possessing three gun-cleaning drip containers (sold over the counter and at gun stores), which could not function as firearm silencers without actual drilling, milling or other modifications which would have required shop tools Speed didn't possess.

Speed's "silencer" conviction(s) are presently on appeal in the U.S. Fourth Circuit. Speed has a more-than-average chance of having his firearm silencer convictions completely overturned in the very near future. In the event this happens, Speed will be in prison for nothing but the four misdemeanors in this case—whose sentences have already been served.

The United States would compound such an injustice by subjecting Speed to wrongful imprisonment while Speed awaits final appellate judgment in a case

where the Supreme Court *has already decided the outcome* in other, similarly-situated cases.

### A. The Jury's Conviction Should Not Stand Because Its Decision Would Have Been Different Had the Jury Instruction Included the New Interpretation of 1512(c)(2)

The question is not whether there is so much evidence that, absent the error, "a guilty verdict would surely have been rendered" but rather whether there is so much overwhelming evidence that the "guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). In Speed's trial, it is likely that the jury's guilty verdict was partly attributable to the interpretation of § 1512(c)(2) pre-*Fischer*.

The government argues that this Court can affirm Speed's conviction if the erroneous legal standard was harmless.[3] The omission of an element is an error that is subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1, 15

---

[3] Even when an element is entirely missing from jury instructions, "the omission of an element is an error that is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 15 (1999). "Where there has been an error in instructions," this Court has found such error to be harmless if the factfinder "necessarily found facts that would have satisfied a proper instruction." *United States v. Stadd*, 636 F.3d 630, 640 (D.C. Cir. 2011) (quoting *United States v. Johnson*, 216 F.3d 1162, 1166 (D.C. Cir. 2000) (finding any error in instructing on elements of 18 U.S.C. § 208(a) harmless). Given the "damning" evidence of "the defendant's extensive understanding of the electoral vote certification process" (ECF 77, at 4), the judge's consideration of the evidence under the pre-*Fischer* legal standard may have been harmless.

(1999). "The "harmless error" test examines whether there was legal error and if so, whether it was prejudicial. *See United States v. Merlos*, 8 F.3d 48, 50 (D.C. Cir. 1993). If the claimed error occurred in a criminal proceeding, the beneficiary of the error (generally the government) bears the risk of the appellate court being left in "grave doubt" as to the error's effect on the defendant's substantial rights. If constitutional rights are implicated, the government will likely have to demonstrate that the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967). In *United States v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008), the D.C. Circuit refused even to consider the weight of the evidence supporting the omitted *mens rea* element in *Sheehan*, explaining that "it is impossible to assess the 'weight' of the evidence in this case, because appellant was prevented from advancing a defense on her knowledge and intent." 512 F.3d at 632. It held as a matter of law that "[e]rror cannot be harmless where it prevents the defendant from providing an evidentiary basis for his defense." *Id.* at 633. And it specifically distinguished *Neder* on the ground that in that case, the "defendant was 'heard' on the issue" of materiality (because the issue was decided by the judge, rather than excluded from the case altogether) and because "the defendant in *Neder* did not contest the issue of materiality." 512 F.3d at 633. Here, under the pre-*Fischer* interpretation of 1512(c)(2), Speed never had an opportunity to provide a defense that he had not impaired the availability or

26

integrity for use in an official proceeding of records, documents, or objects. Were the Court to allow him to provide such a defense, a jury would likely reach a different verdict on that count. The government does not meet its burden to demonstrate that the error was harmless beyond a reasonable doubt.

### B. Case Law Supports Vacating a Conviction Where an Omitted Element Was Not Considered by the Jury

There are not many examples in federal court of cases where new interpretations of an element caused a reviewing court to vacate a previous conviction. In one Fifth Circuit case, *United States v. Stanford*, 823 F.3d 814 (5th Cir. 2016), the Fifth Circuit rejected prosecutors' claim that the instructional error was rendered harmless by "ample evidence" of the omitted element. It noted that the Government's claim of overwhelming evidence need not be evaluated at all because "it is one thing for the government to look back now that the Court has provided the proper framework and pick out evidence that fits into that framework; it is another to assume that the jury focused on the same evidence, without the benefit of that framework." 823 F.3d at 835. The court went on to explain that the "government misses the point in focusing only on the evidence actually presented at trial," as it "ignores the possibility that [the defendant] might have done more to counter the evidence if he had known that it mattered for the verdict." *Id*. at 837.

The court held, instead, that the "error is not harmless unless proof of the missing element was inherent in proof of one of the others."  *Id*.

There are some relevant cases in state court.  In *People v. Nitz*, an Illinois case, 219 Ill.2d 400, 848 N.E.2d 982 (2006), the appellate court found that when applying the harmless error rule, the appropriate standard is whether a rational jury would have convicted defendant absent the error.  Thus, even had harmless error analysis been warranted, the appellate court erred by basing its analysis on *speculation* whether the jury would have found the factor which authorized an enhanced sentence (emphasis added).  In Speed's case, the prosecution similarly speculates that the jury would have necessarily found facts that would have satisfied a proper instruction under 1512(c)(2) with the evidence it heard pre-*Fischer*.  It is not clear whether the jury would have had the same basis to convict.

In a California case, the court was clear that its task in analyzing prejudice is not to ask whether the omitted element could have been supported by reasonable inferences, but rather to assess "whether any rational fact finder could have come to the opposite conclusion."  *See People v. Mil*, 53 Cal.4th 400, 419 (2012).  In its appellant brief supporting a retrial, defendant's counsel argued: for even if the Court were to find the "overwhelming evidence" standard generally viable in the omitted element context, it should still find that it could not apply in a case like the current one, where the element was not just omitted at trial, but rather did not yet

exist. When that is the case, it would be improper for the reviewing court to rely on "overwhelming evidence" alone, given that any contrary evidence that might have created a doubt as to the element may only have been absent from trial because there was no reason at the time to present it. *People v. Cooper*, No. S273134, (Nov. 17, 2022) (Appellant's Reply Brief on the Merits).

## CONCLUSION

**Demonstrating and petitioning to "prevent Congress from completing the certification "until [Congress] investigation into voting improprieties" is not "a textbook case of obstruction of an official proceeding." In fact, it is 100% political advocacy protected by the First Amendment.**

Nothing in the District Court's assessment of Speed's conduct on January 6 satisfies the requirements of Section 1512(c)(2) as outlined by the Supreme Court in *Fischer*. Being able to "explain" "the electoral vote procedure at length" and "not[ing] the potential that six states would send an electoral slate in favor of President Trump, despite news reportings suggesting that Former Vice President Biden had won in those states" *does not constitute obstruction*. Claiming "that the vice president would get to decide which slate of electors to present to the Congress for certification" *does not constitute obstruction*. Being shocked "that 'our own vice president just sold us out'" *does not constitute obstruction*.

Expressing "no respect for the people in this building" *does not constitute obstruction*. Nor does merely recounting that "we controlled the entire building," or that "[t]he Congress and Senate had evacuated through the tunnels, so nobody was there except us," *constitute obstruction*.

ACCORDINGLY, Speed prays for vacatur and summary dismissal of his §1512(c) conviction.

DATE: November 26, 2024   Respectfully Submitted,

Roger I. Roots
John Pierce Law, P.C.
21550 Oxnard St., 3rd Fl PMB 172
Woodland Hills, CA 91367
Telephone: (213) 349-0054
rroots@johnpiercelaw.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation because it contains 6,448 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Cir. R. 32(a)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P.

32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

Dated: November 26, 2024            */s/Roger Roots*
                                    Roger Roots

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c) and Cir. R. 25(c), that on November 26, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: November 26, 2024            */s/Roger Roots*
                                    Roger Roots